1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUAN MANUEL DE LA TORRE,                      Case No.  1:23-cv-00021-JLT-BAM

12                    Plaintiff,
                                                   **FINDINGS AND RECOMMENDATIONS**
13             v.                                  **REGARDING PLAINTIFF'S MOTION FOR**
                                                   **SUMMARY JUDGMENT**
14   MARTIN O'MALLEY, Commissioner of
     Social Security,[1]                           (Docs. 15, 18)
15
                     Defendant.
16                                                 FOURTEEN-DAY DEADLINE

17

18

19                              <u>**Findings and Recommendations**</u>

20                                    <u>**INTRODUCTION**</u>

21         Plaintiff Juan Manuel De La Torre ("Plaintiff") seeks judicial review of a final decision of the

22   Commissioner of Social Security ("Commissioner") denying his application for disability insurance

23   benefits under Title II of the Social Security Act and supplemental security income under Title XVI of

24   the Social Security Act.  The matter is currently before the Court on Plaintiff's motion for summary

25

26

27   _____

28   [1]  Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule
     25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

                                                   1

judgment and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for issuance of findings and recommendations.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record as a whole or based upon proper legal standards.  Accordingly, this Court will recommend granting Plaintiff's motion for summary judgment, granting Plaintiff's appeal, and reversing the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 25, 2020.  AR 299-300, 301-10.[2]  Plaintiff alleged that he became disabled on January 1, 2017, due to depression, anxiety, and asthma.  AR 363.  Plaintiff's applications were denied initially and on reconsideration.  AR 193-97, 205-09.  Subsequently, Plaintiff requested a hearing before an ALJ.  Following a hearing, ALJ John Dowling issued a decision denying benefits on September 1, 2021.  AR 38-55, 61-90.  Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied.  AR 1-6.  This appeal followed.

### Relevant Hearing Testimony

ALJ John Dowling held a telephonic hearing on August 19, 2021.  Plaintiff appeared with his attorney, Jonathan Pena.  James Miller, an impartial vocational expert, also appeared.  AR 63.

In response to questions from the ALJ, Plaintiff testified that he lives with his retired parents.  He has a driver's license and drives.  He dropped out of high school in 12th grade, but went to adult school to get his diploma.  He does not have any college or vocational training.  AR 65-67.

When asked about his past work and different jobs reported in 2020 and 2021, Plaintiff testified that he started a lot of jobs in those years, but could not keep them due to being overwhelmed, and because of his anxiety, depression.  AR 70.  His anxiety and depression stop him from working.  He has had suicidal thoughts and has been going to a mental facility, but it does not really help.  He

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  has been trying to find a job where he could stick to it, but he cannot seem to find anything.  AR 73-

2  74.

3       When asked about his drug use, Plaintiff testified that he was heavy into drugs a couple years

4  back.  He no longer drinks or smokes weed, but used meth twice during the year.  AR 74-75.  Plaintiff

5  sometimes forget to take his mental health medications and sometimes would think it was not

6  working.  AR 74.

7       When asked about a comment Plaintiff made to one of his providers in 2017 that made it sound

8  like he was basically asking what a person needed to do to get on SSI for depression, Plaintiff did not

9  remember it.  Plaintiff testified that if he could work and make living, he would rather do that, but he

10  is seeking help because he cannot do it.  AR 75-76.

11       In response to questions from his attorney, Plaintiff testified that he still has thoughts of hurting

12  himself, which come and go.  He has never had thoughts of hurting others.  Plaintiff denied any issues

13  with getting along with others, taking instructions from supervisors or coworkers, or having mood

14  swings or anger in the workplace.  AR 76-78.

15       When asked about his abilities, Plaintiff testified that he loses concentration "real fast."  AR

16  78.  He can do home chores with no problem, but he sometimes does not do them because his

17  depression is so bad.  He stays isolated in a room.  He probably stays inside for four days out of the

18  week.  He will go for a walk once or twice a week.  He does not spend time with friends or family

19  outside of his home.  If they invite him to a party, then he will go, unless it is one of those days where

20  he is stuck in bed.  AR 78-81.

21       Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE").

22  The VE classified Plaintiff's past work as cleaner/housekeeper, prep cook or cook helper, and farm

23  machine operator.  AR 86.  For the first hypothetical, the ALJ asked the VE to assume a person of

24  Plaintiff's age, education, and work experience who is able to perform work with no exertional

25  limitations, but the person would have the following non-exertional limitations:  The individual would

26  be capable of working a low stress job defined as having only occasional decision-making required,

27  only occasional changes in the work setting, work with no production rate or pace work, meaning no

28  work at a line or at a station where the worker cannot control the speed of the work, and with only

3

occasional interaction with the public and coworkers. The VE testified that all of three of Plaintiff's past work positions would fit the hypothetical, but the prep cook might have a few more production-type demands. AR 85-87. The VE also identified other jobs in the national economy that would accommodate the limitations, such as janitor/cleaner position or automobile detailer. AR 87.

The VE testified that even absences one day per month on a chronic basis would be work preclusive, including coming in late, leaving early, or just not showing up at all for a scheduled shift. AR 87. The VE further testified that if someone reaches the 10% level of being off task, then that precludes competitive employment. AR 88.

For the second hypothetical, Plaintiff's counsel asked the VE to add to the first hypothetical that the individual would need to take an additional four unscheduled breaks of ten minute in duration each, in addition to normal break and lunch periods. The VE testified that there would not be any work. If the additional breaks were needed on a continuing basis, then it would preclude all work. AR 88-89,

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 41-55. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2017, his alleged onset date. AR 44. The ALJ identified the following severe impairments: major depressive disorder and anxiety disorder. AR 44. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 44-47.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional impairments: capable of a low stress job, defined as having only occasional decision-making required and only occasional changes in the work setting, work with no production

1   rate or pace work, meaning no work at a line or station where the worker cannot control the speed of

2   the work, work with only occasional interaction with the public and co-worders.  AR 47-53.  With this

3   RFC, the ALJ determined that Plaintiff could perform his past relevant work as a cleaner/housekeeper

4   and farm machine operator.  AR 53.  The ALJ alternatively determined that there were jobs existing in

5   the national economy that Plaintiff could perform, such as janitor and automobile detailer.  AR 53-54.

6   The ALJ therefore concluded that Plaintiff had not been under a disability from January 1, 2017,

7   through the date of the decision.  AR 55.

8   ## SCOPE OF REVIEW

9       Congress has provided a limited scope of judicial review of the Commissioner's decision to

10  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

11  Court must determine whether the decision of the Commissioner is supported by substantial evidence.

12  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

13  402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

14  1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

15  adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be

16  considered, weighing both the evidence that supports and the evidence that detracts from the

17  Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

18  evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

19  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

20  determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

21  and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

22  *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

23  ## REVIEW

24      In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

25  substantial gainful activity due to a medically determinable physical or mental impairment which has

26  lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

27  1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

28  severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff raises the following arguments: (1) the ALJ failed to explain the discrepancy between the opinion he found persuasive and the RFC; (2) the ALJ failed to properly evaluate the opinion evidence of the examining medical sources; and (3) the ALJ failed to offer any reason for rejecting Plaintiff's subjective complaints. (Doc. 15 at p. 3.)

**A. RFC**

Plaintiff argues that the ALJ failed to explain the discrepancy between the opinions of the state agency consultants, which he found persuasive, and the RFC determination. (Doc. 15 at p. 11.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all of the relevant medical in your case record."). Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence." *Ashlock v. Kijakazi*, No. 1:21-CV-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022). "In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints." *Karl v. Kijakazi*, No. 1:21-cv-01576-SKO, 2023 WL 3794334, at *4 (E.D. Cal. June 1, 2023) (citing *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [the] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Here, the state agency consultants opined, in relevant part, that Plaintiff had social interaction limitations, including moderate limitations in his ability to interact with others and in his ability to accept instructions and respond appropriately to criticism from supervisors.  AR 106, 111-12, 133, 138-39, 157, 162, 179, 184.  The ALJ found the state agency physicians' opinions persuasive regarding Plaintiff's social limitations.  AR 51.

Plaintiff now argues that the ALJ erred because he found the social limitations persuasive, but failed to include in the RFC any limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors.  (Doc. 15 at p. 11.)  The Court does not find reversible error.  In developing Plaintiff's RFC, the ALJ explained that Plaintiff had denied any issues with supervisors or being aggressive at work, and that he was capable of the identified RFC.  AR 50, 77 ["Q  What about in terms of taking instruction from supervisors or coworkers if they're, you know, criticizing you or telling you?  A  I'm very good with that.  I listen to my supervisors . . ."].  The ALJ's identification of Plaintiff's testimony and denial of issues provides a sufficient explanation for excluding from the RFC any limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors.  *Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th Cir. 2019) (indicating court will defer to the ALJ's decision where the ALJ's "path may reasonably be discerned").

### B.  Evaluation of Medical Opinions

Plaintiff argues that the ALJ erred in his evaluation of medical opinions from Dr. Mircea Truta, PNP Doxie Palma, and the consultative examiner, Robin Hemenway, Psy.D.  (Doc. 15 at p. 12.)

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. §§ 404.1520c, 416.920c.  Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with

7

the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods,* 32 F.4th at 792.  The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods*, 32 F.4th at 792  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.* (internal citations omitted).

Dr. Truta's Opinion

Plaintiff challenges the ALJ's evaluation of the opinion of Dr. Truta.  (Doc. 15 at pp. 12-15.)

On June 2, 2021, Dr. Truta completed a Mental Residual Functional Capacity Questionnaire form.  AR 682-84.  Dr. Truta opined that Plaintiff's mental impairments precluded performance of the following activities for 15% or more of an 8-hour work day:  understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to critics from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to change in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of

others.  AR 682-83.  Dr. Truta also opined that Plaintiff's mental impairments precluded performance of the following activities for 10% of an 8-hour workday:  sustain an ordinary routine without special supervision, make work-related decisions, interact appropriately with the general public, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  AR 682-83.  Additionally, Dr. Truta opined that Plaintiff's mental impairments precluded performance of the following activities for 5% of an 8-hour workday:  remember locations and work-like procedures, understand and remember very short and simple instructions, and carry out very short and simple instructions, AR 682-83.  Dr. Truta estimated that Plaintiff would be absent from work 5 days or more per month and would be unable to complete an 8-hour workday 5 days or more per month.  AR 684.

In evaluating Dr. Truta's opinion, the ALJ reasoned as follows:

> The undersigned finds Dr. Mircea Truta's opinion that claimant will be off task and unable to perform in several areas unpersuasive (Exhibit 11F).  Dr. Truta's own examination findings do not support such extreme limitations.  For example, she documented that the claimant was calm, cooperative, and that he could fairly relate (Exhibit 15F, p. 36).  The evidence is not consistent with extreme limitations.  For example, counseling notes from September of 2020 suggested depression and anxiety symptoms (Exhibit 9F, p. 6).  The claimant alleged panic attacks, but no overt psychiatric issues were noted.  Upon exam, the claimant had intact attention and concentration, and he was not paranoid (Exhibit 9F, p. 7).  The claimant's regular provider diagnosed major depressive disorder and anxiety disorder.  No psychosis related diagnoses were indicated (Exhibit 10F, p. 15).  The claimant reported that he wanted to go back to school in October of 2020.  In March of 2021, the claimant reported partial compliance with one of his medications.  The claimant denied manic symptoms when sober (Exhibit 15F, p. 3).  During a previous visit, the claimant had been described as motivated and happy.  In March, the claimant was described as mildly agitated, but his memory and attention span were intact (Exhibit 15F, p. 8.)

AR 52.

The Court finds that the ALJ did not appropriately evaluate the persuasiveness of Dr. Truta's opinion based on the factors of supportability and consistency.  As to supportability, the ALJ concluded that Dr. Truta's "extreme limitations" were unsupported by Dr. Truta's own examination findings.  AR 52.  However, the ALJ cites only a single treatment record reflecting that Plaintiff was

9

calm, cooperative, and that he could fairly relate.  AR 52, 810 (4/16/2021).[4]  The ALJ provides no explanation, and it is not apparent, as to how findings of "calm, cooperative" and "fairly relate" undermine Dr. Truta's "off task" or other limitations, such as the ability to maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  AR 682-83.

As to consistency, the ALJ stated that other evidence in the record was not consistent with Dr. Truta's "extreme limitations."  AR 52.  To sustain that statement, the ALJ cited (1) a counseling progress note from September 2020, which suggested depression and anxiety symptoms, but indicated that Plaintiff had intact attention and concentration (AR 52, citing AR 659 [Exhibit 9F, p. 6.], 660 [Exhibit 9F, p. 7]), (2) a November 2020 progress note from Plaintiff's regular provider diagnosing a major depressive disorder and anxiety disorder, which included a report from Plaintiff that he wanted to go back to school (AR 52, citing AR 679 [Exhibit 10F, p. 15], 678), and (3) a visit prior to March 2021 in which Plaintiff had been described as motivated and happy (AR 52, citing AR 777 [Exhibit 15F, p. 3]).  It is not apparent from the ALJ's decision how this minimal evidence is inconsistent with Dr. Truta's opinion that, among other issues, Plaintiff had limitations in the ability to maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to change in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places

_____

[4] Additional treatment notes from Dr. Truta also generally reflected that Plaintiff was calm, cooperative, and that he could fairly relate.  *See*, *e.g.*, AR 782, 818, 822.

or use public transportation, and set realistic goals or make plans independently of others.  The additional evidence the ALJ cites to demonstrate consistency, namely that in March 2021 Plaintiff reported partial compliance with one of his medications, denied manic symptoms when sober, and was described as mildly agitated, with intact memory and attention span, is from Dr. Truta's treatment records.  AR 52, citing AR 777 [Exhibit 15F, p. 3] and 782 [Exhibit 15F, p. 8], 781.  Dr. Truta's own records speak to the *supportability* of Dr. Truta's opinion, not the consistency of that opinion with *other* evidence in the record.  *See Woods*, 32 F.4th at 792 (the consistency factor addresses "the extent to which a medical opinion is consistent with the evidence from *other* medical and nonmedical sources") (internal quotation marks omitted, emphasis added).

The Court therefore finds that the ALJ failed to properly evaluate the persuasiveness of Dr. Truta's opinion.  The Court also finds that the ALJ's error was not harmless as the limitations identified by Dr. Truta may have an impact on the RFC determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where mistake nonprejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

Given the legal error, the Court must decide the appropriate remedy.  The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments concerning whether the ALJ erred in his evaluation of medical opinions from PNP Doxie Palma and Robin Hemenway, Psy.D or properly evaluated Plaintiff's subjective complaints.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the

1   reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex*

2   *rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address

3   the other claims plaintiff raises, none of which would provide plaintiff with any further relief than

4   granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6

5   (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other

6   arguments raised.").

7   <u>**CONCLUSION AND RECOMMENDATION**</u>

8          Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial

9   evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS

10  HEREBY RECOMMENDED as follows:

11        1.     Plaintiff's motion for summary judgment (Doc. 15) be granted;

12        2.     Plaintiff's appeal from the administrative decision of the Commissioner of Social

13               Security be granted and the agency's determination to deny benefits be reversed; and

14        3.     The Clerk of this Court be directed to enter judgment in favor of Plaintiff Juan Manuel

15               De La Torre and against Defendant Martin O'Malley, Commissioner of Social

16               Security.

17        These Findings and Recommendations will be submitted to the United States District Judge

18  assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being

19  served with these findings and recommendations, the parties may file written objections with the

20  Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

21  Recommendations."  The parties are advised that the failure to file objections within the specified time

22  may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

23  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391,

24  1394 (9th Cir. 1991)).

25  IT IS SO ORDERED.

26     Dated:   __**February 28, 2024**__         ___/s/ *Barbara A. McAuliffe*___

27                                              UNITED STATES MAGISTRATE JUDGE

28

12